USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/25/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JAMES TAGLIAFERRI,

           Defendant.

13 Cr. 115 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Before the Court is Defendant James Tagliaferri's motion for a sentence reduction due to his serious health conditions, brought pursuant to 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239, as well as his motion for expedited reconsideration of that motion. Although Tagliaferri does indeed have serious health conditions, in light of the fact that he has been transferred to home confinement since filing his motion and is able to access the medical care he seeks, his motions are denied.

## BACKGROUND

James Tagliaferri is an 80-year-old man who was convicted of investment advisor fraud, securities fraud, wire fraud, and violations of the Travel Act. In February 2015, Tagliaferri was sentenced to a total of 72 months imprisonment, which was 138 months below the bottom of the Sentencing Guidelines range. *See* Sentencing Transcript ("Tr."), Dkt. 140, at 51, 82; Motion for Sentence Reduction ("MSR"), Dkt. 237 ¶ 1. Tagliaferri's Good Conduct Release date is August 13, 2020, and his full term release date is July 3, 2021. *See* BOP Letter, Dkt. 259-1, at 1.

At sentencing, the Court expressly considered Tagliaferri's health conditions. In particular, the Court noted that Tagliaferri was "75 years old and claims to suffer from various afflictions," which included "peripheral neuropathy, gallstones, kidney cysts, and a history of colon cancer."

Tr. at 53. The Court also stated that Tagliaferri had "undergone angioplasties," took "various medications and vitamins," and, in addition to his other conditions, suffered from "shortness of breath, anxiety and depression." *Id.* at 81. The Court found that, "[p]artly for those reasons," Tagliaferri was unlikely to pose a "real risk of perpetrating further crimes." *Id.* Nevertheless, the Court made clear that Tagliaferri's offenses were serious, and that a substantial sentence was therefore necessary "to promote respect for the law and to warn others in charge of investing people's savings." *Id.* at 81–82. After weighing these considerations, among others, the Court sentenced Tagliaferri to a total of 72 months imprisonment, or 138 months below the bottom of the Sentencing Guidelines range. *See id.* at 82.

On June 18, 2019, Tagliaferri filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582, as amended by the First Step Act, seeking that his term of imprisonment be reduced to time served and that he be released to commence his term of supervised release. Tagliaferri argued that his age and serious medical conditions constituted "extraordinary and compelling reasons warranting compassionate release." *See* MSR ¶¶ 7–12, 27. The Government filed a letter in opposition on August 8, 2019. *See* Dkt. 244. Tagliaferri replied on August 13, 2019. *See* Dkt. 245.

On October 25, 2019, the Government informed the Court that Tagliaferri had been "transferred from the custody of the BOP at FCI Beckley to a half-way house in the Atlanta area" on October 23, and that he was expected to be transferred to home detention within the next few days. *See* Dkt. 247. The Government argued that, since Tagliaferri was no longer incarcerated in a BOP facility, and would soon be in a home detention setting, the Court should deny his motion for a sentence reduction. *Id.* On that same day, the Court issued an order denying Tagliaferri's motion in light of the developments detailed in the Government's letter. *See* Dkt. 248. The Court

also stated that Tagliaferri may renew his motion if he was not in fact released from BOP detention. *Id.*

Tagliaferri was released to a Residential Reentry Center (i.e., a halfway house) on October 29, 2019,[1] and transferred from the halfway house to home confinement under the Bureau of Prisons ("BOP") Elderly Detention program on November 1, 2019. *See* BOP Letter at 1. On October 29, 2019, however, Tagliaferri filed a motion for expedited reconsideration of his motion for a sentence reduction. *See* Motion for Reconsideration ("MFR"), Dkt. 249. Tagliaferri acknowledged that he had been transferred to a halfway house since he filed his original motion, but argued that his motion was not moot because (1) he was not eligible for home detention until February 13, 2020, and (2) even if he was released to home detention, he still sought "the termination of his sentence so that he can commence his term of community supervision." *Id.* at 2–3. In the alternative, Tagliaferri requested that the Court "convert his remaining sentence to a sentence of home confinement, such that Tagliaferri may reside with his partner Murna Byron," but be permitted to leave for various purposes, including to obtain medical care. *Id.* at 5. The Court agreed with Tagliaferri that his motion for a sentence reduction was not moot, but nonetheless noted that whether Tagliaferri is transferred to home detention is relevant to the Court's consideration of that motion. *See* Dkt. 250. The Court thus ordered the Government to update it as to the status and schedule of Tagliaferri's transfer to home detention. *Id.*

On November 1, 2019, the Government updated the Court, explaining that Tagliaferri had been transferred to home detention that day, and that he was now residing with Ms. Byron and permitted to leave his residence, including for medical appointments, as long as his movements outside of the residence were approved by his assigned counselor at the halfway house. *See* Gov't

---

[1] Although BOP's letter states that Tagliaferri was transferred to the halfway house on "October 29, 2018," the Court assumes it meant to write "October 29, 2019."

Letter, Dkt. 251. Tagliaferri submitted several letters to the Court shortly thereafter, acknowledging that he was residing with Ms. Byron and in home detention, but nonetheless renewing his request for a sentence reduction. *See* Dkts. 252–254. In a letter dated November 6, 2019, Tagliaferri complained about the "cumbersome approval process" required in order for him to leave his residence for any reason, and noted that the approval process was "particularly problematic" because the BOP was "no longer providing for [his] food or medical care in any way." Nov. 6 Letter, Dkt. 254, at 1–2. Tagliaferri also stated that he had attempted to receive Social Security and federal Medicare benefits, but was told that he would not be eligible for such benefits until August 13, 2020, his release date. *Id.* at 2. Thus, although Tagliaferri conceded that he was now living at home and permitted to travel and "participate in society" (albeit with limitations), he argued that the Court should reduce his sentence to time served and allow him to commence his term of supervised release nine months early. *Id.* at 2–3.

In response to a November 7, 2019 Court order, *see* Dkt. 255, the BOP filed a letter, dated November 13, 2019, in which it explained that: (1) the BOP has "no decision making authority" regarding the receipt of Social Security or Medicare benefits; (2) under BOP policy, inmates who have transitioned to home confinement are "responsible for their own medical and dental care expenses throughout the reentry process," but "if such an inmate is not covered by insurance, the BOP ultimately remains responsible for their medical care and expenses"; and (3) in order to obtain approval to leave the residence for medical care or "any other necessity," inmates in home confinement (like inmates at the halfway house) should submit a movement request to the halfway house. BOP Letter at 1–2. The BOP advised Tagliaferri to discuss "his necessary medical treatments" with his counselor at the halfway house, and informed him that he can schedule medical appointments "through the BOP-contracted healthcare providers in the Atlanta area." *Id.*

4

at 2. On November 18, 2019, however, Tagliaferri renewed his request for a sentence reduction to time served, arguing (1) that BOP's "willing[ness] to take responsibility for [his] medical care and expenses by reinstitutionalizing him" is insufficient; (2) that requiring him to "engage with the cumbersome movement-request system" and the "opaque 'medical care request' system" deprives Tagliaferri of certain liberties; (3) that he has been informed that if he enrolls in Georgia's state "Medicaid" benefits, then he would no longer be eligible to receive his federal benefits; and (4) that he has visited the Social Security Administration office three times and "has been given the run-around concerning both retirement and medical benefits." *See* Nov. 18 Letter, Dkt. 260, at 1–2. Thus, Tagliaferri argues, his sentence should be reduced to time served, so that he may commence his term of supervised release. *Id.* at 2.

## DISCUSSION

Under the First Step Act, which modified 18 U.S.C. § 3582(c)(1)(A), federal prisoners may move for compassionate release directly with the sentencing court after exhausting all administrative remedies within the BOP.[2] The district court may reduce a sentence where (1) "extraordinary and compelling reasons" exist to "warrant such a reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a), to the extent such factors apply.[3] *See* 18 U.S.C. § 3582(c)(1)(A)(i). District courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction. *See United States v. Jefferson*, 662 F.

---

[2] Here, it is undisputed that Tagliaferri has properly exhausted all of his administrative remedies with the BOP.

[3] Pursuant to § 3553(a), a court must consider the following factors in imposing sentence: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the applicable offense category as set forth in the guidelines; (5) "any pertinent policy statement . . . by the Sentencing Commission"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

App'x 36, 38 (2d Cir. 2016); *United States v. Rose*, 379 F. Supp. 3d 223, 225–26 (S.D.N.Y. 2019).

The Application Notes to Section 1B1.13 of the United States Sentencing Guidelines provide that extraordinary and compelling reasons exist to support compassionate release where a defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

App. n.1(A)(ii).

Here, although Tagliaferri's request for compassionate release is not technically "moot" as a legal matter, the Court nonetheless concludes that recent developments have obviated the need for granting him such relief. Tagliaferri's motion for a sentence reduction was based on his deteriorating health conditions and his need for medical care. *See* MSR. While there is little doubt that Tagliaferri is "suffering from a serious physical or medical condition" and "experiencing deteriorating physical . . . health because of the aging process," the conditions to which Tagliaferri is currently subject weigh heavily against granting his motion. Since the time he filed his motion in June 2019, Tagliaferri has been transferred out of BOP physical custody and into home confinement. *See* BOP Letter. He now resides with his partner, Ms. Byron, and is permitted to leave his residence for various purposes, including to obtain medical care. As such, necessary medical care remains available to Tagliaferri through, at the very least, BOP-contracted healthcare providers in the Atlanta area. *See id.* That Tagliaferri would prefer not to abide by BOP's approval process and/or schedule medical appointments through BOP-contracted healthcare providers does

6

not change the fact that he now has access to medical care and other basic necessities. Thus, his grounds for seeking compassionate release in June 2019 have, in large part, been resolved. *See United States v. Rivernider*, No. 3:10-cr-222(RNC), 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019) (denying defendant's motion for compassionate release where defendant had raised "concern[s] about the quality of medical care provided to him at [the correctional institution]," but where, since defendant had filed his motion, "these lapses ha[d] been corrected").[4]

Moreover, in imposing Tagliaferri's sentence, which was 138 months below the bottom of the Guideline range, the Court made clear that it had considered Tagliaferri's poor health. In particular, the Court stated that it had taken into account Tagliaferri's heart issues and his history of angioplasties, as well as his peripheral neuropathy and need to use a wheelchair. Nor was the Court under the impression that these conditions (or Tagliaferri's general health) were likely to improve over time.[5] The Court also emphasized, however, that Tagliaferri's offense, in which he defrauded his victims of millions of dollars, was a significant one. As some of his victims attested to at sentencing, Tagliaferri not only breached their trust, but cost them their "livelihood, their savings, [and] what they hoped to pass on to their children and their grandchildren." Tr. at 79–80. After carefully weighing these factors, among others, the Court concluded that a sentence of 72 months incarceration was adequate, but not more than necessary, to "comply with the purposes of sentenc[ing]." *Id.* at 82. The Court believes that this remains an appropriate sentence.

If Tagliaferri were still incarcerated or in some other form of BOP physical custody, his serious health issues may well have constituted "extraordinary and compelling reasons" for

---

[4] While Tagliaferri may not receive Social Security and/or federal Medicare benefits until August 13, 2020, *see* Nov. 6 Letter at 2; BOP Letter at 1, that fact does not constitute an "extraordinary and compelling reason[]" warranting compassionate release.

[5] Knowledge of Tagliaferri's macular degeneration, developed after sentencing, would not have led the Court to impose a different sentence in this case.

7

granting him compassionate release. But the purposes of 18 U.S.C. § 3582(c)(1)(A) will not be served by granting Tagliaferri's motion now. Thus, although the Court recognizes—as it did at sentencing—that Tagliaferri suffers from a variety of serious medical conditions, it nonetheless concludes that, in light of his release from custody, compassionate release is not warranted here. Tagliaferri's motion for a sentence reduction is therefore denied.[6]

## CONCLUSION

For the foregoing reasons, Tagliaferri's motion for a sentence reduction pursuant to 18 U.S.C. § 3582 and motion for expedited reconsideration are both denied.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 237 and 249.

SO ORDERED.

Dated: November 25, 2019
New York, New York

Ronnie Abrams
United States District Judge

---

[6] Because the Court is denying Tagliaferri's request for a sentence reduction and both parties agree that his victims need not be formally notified or heard from in these circumstances, the Court has not notified the victims pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771.

8